UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ERNESTINE COTTEN,

     Plaintiff,

v.                               Case No. 4:19cv21-RH-HTC

BUREAU OF PRISONS ("BOP"),
NURSE GRIFFISS,

     Defendants.

_____/

## REPORT AND RECOMMENDATION FOR DISMISSAL OF THIRD AMENDED COMPLAINT

Plaintiff Ernestine Cotten, a prisoner of the Federal Bureau of Prisons ("BOP"), proceeding *pro se* and *in forma pauperis*, initiated this action in January 2019, by filing a complaint under 28 U.S.C. §§ 1331 and 1346.[1] ECF Doc. 1. Cotten has been given three (3) opportunities to amend her initial complaint to state a cause of action against the Defendants. This matter is now before the Court on Cotten's third amended complaint (ECF Doc. 26). The matter was referred to the undersigned

---

[1] Although Cotten's initial complaint was on the Court's required forms for a federal prisoner, her third amended complaint is on this Court's complaint form for civil rights actions brought by state prisoners pursuant to 42 U.S.C. § 1983. Nonetheless, as Cotten is a federal prisoner alleging claims against a federal agency and employee, this Court will consider Cotten's claims as a civil rights action brought under 28 U.S.C. §§ 1331, 1346.

Magistrate Judge for preliminary screening and a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).

Upon review of the third amended complaint, the undersigned respectfully recommends that Cotten's complaint be dismissed pursuant to 28 U.S.C. § 1915A and § 1915(e)(2)(ii) and (iii). Additionally, because Cotten has already had several opportunities to amend her complaint and more than a year to do so, the undersigned finds that further opportunities to amend would be futile.

## I.   THE THIRD AMENDED COMPLAINT

Although Cotten is currently incarcerated at FMC Carswell (Texas), in her third amended complaint she sues two defendants:  the BOP[2] and Nurse Griffiss[3], based on events that occurred while Cotten was at FCI Tallahassee.  ECF Doc. 26 at 1.  Plaintiff's entire statement of facts, as set out in her third amended complaint. reads as follows:

> 1. Nurse Griffiss provided me with the wrong medication at pill line on multiple consecutive occasions.

---

[2] Cotten identifies the "United States Department of Justice Bureau of Prisons" in the case style of the third amended complaint form but does not reference the BOP under the "Defendants" section or elsewhere on the complaint form.  Nonetheless because the Court is to construe a *pro se* plaintiff's complaint liberally, the undersigned will treat the BOP as a named defendant and will address Cotten's claims against the BOP herein.

[3] In Cotten's initial complaint, she identified Nurse Griffiss as "Male Nurse Griffin."  ECF Doc. 1 at 1.  In her first amended complaint, Cotten identifies him as "Nurse Grifiss a/k/a Nurse Griffin."  ECF Doc. 12 at 2.  In Cotten's second amended complaint (mislabeled "first amended complaint") she identifies him as "Nurse Griffiss", and in her third amended complaint she identifies him as "Nurse Griffiss a/k/a Griffis."  ECF Doc. 23 at 1; ECF Doc. 26 at 1.  The Court will refer to the Defendant Nurse herein as "Nurse Griffiss" (spelled with a double "f" and double "s").

2. The administrator admitted the medical mistake could be deadly, "especially with the reaction I presented with."

3. Nurse Griffiss did speak to me about med confusion and stated they were in the same family.

4. Nurse on med line spoke to me about medication interactions after reporting again the medication dispensing mistake.

ECF Doc. 25 at 5.

Based solely on those factual allegations, Cotten claims Defendants violated her "(1) rights to adequate and accurate medical care[,] (2) right to be free from peonage [and] (3) right to be protected from death while enslaved." *Id.* at 4. As relief, Cotten seeks "[a]dequate medical and psychological care and necessary and timely follow-up as well as just compensation for mistake and future injury expenses." *Id.* Cotten does not state whether she is suing Nurse Griffiss in his individual or official capacity and thus the undersigned will address both.

## II. <u>PROCEDURAL HISTORY</u>

As an initial matter, although Plaintiff's third amended complaint is the operative pleading and replaces her prior complaints, it has only the scant allegations set out above. Therefore, in an effort to read Plaintiff's third amended complaint liberally, as the Court must, the undersigned also considers *all* the allegations in her four (4) complaints to determine whether they collectively state a cause of action against the BOP or Nurse Griffiss. *See Hourani v. Mirtchev*, 943 F. Supp. 2d 159,

171 (D.D.C. 2013), *aff'd*, 796 F.3d 1 (D.C. Cir. 2015) ("The Court may consider the original Complaint and Plaintiffs' other filings, including sworn statements, in evaluating the Amended Complaint [on a MTD]."); *Little v. City of New York*, No. 13 CV. 3813 JGK, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("[b]ecause the plaintiff is proceeding *pro se*, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading); *Roth v. Farmingdale Union Free Sch. Dist.*, No. 18CV4319AMDARL, 2019 WL 3281126, at *1 n. 2 (E.D.N.Y. July 19, 2019) ("All facts are taken from the complaint, amended complaint, and attached exhibits. . . . Courts ordinarily do not consider prior iterations of a complaint, but because the plaintiff proceeds *pro se*, I interpret both the original and amended complaint together as the operative complaint."). Thus, the relevant allegations from each are discussed below:

A. **Initial Complaint**

Cotten's initial complaint identified seven (7) defendants: The United States, Male Nurse Griffin, HSA Nurse Newell, Officer Turner, Officer Sailor, Lt. Langford and Nurse Fairchild. Cotten sued all defendants in their individual and official capacities. ECF Doc. 1 at 6. Cotten alleged that the United States was liable for overseeing the BOP and its employees; that Nurse Griffin administered the wrong medication; that Nurse Newell was advised of the wrong medication being administered and did not take action; that Nurse Fairchild said she would see about

the situation but did not take action; that Officer Turner attempted to assist Cotten but did not follow-up; that Lt. Langford attempted to notify the medical unit and requested Cotten be transported to the hospital but that request was declined and he did not act further; and that Officer Sailor did not help Cotten after Cotten sought help from Officer Sailor.

Cotten also alleged that after receiving the wrong medication, she experienced "all kinds of side effects, including mobility, attention deficit, concentration and my physical being." ECF Doc. 1 at 6. She claims she "did not feel well." *Id.* Based on those allegations, Cotten sought compensatory and punitive damages for the defendants' violation of her Eighth Amendment rights against cruel and unusual punishment, as well as to have the FCI-Tallahassee staff trained because "this 'mistake' should never occur." *Id.* at 8.

Attached to Cotten's initial complaint is a claim and appeals she filed under the BOP's Administrative Remedy Program relating to this incident, which the undersigned also considered. *See Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009) (a district court in ruling on a motion to dismiss is not required to disregard documents that the plaintiff himself filed with his original complaint). Additionally, as discussed further below, those documents are relevant to whether Cotten has established a claim under the Federal Tort Claims Act ("FTCA").

Cotten filed an "Informal Grievance Attempt" on June 7, 2018, alleging she was given the wrong medication by Nurse Griffiss on 4/28/2018, and alerted him to same on 4/29/2018. While acknowledging that the medication she took was wrong, however, he said "it's okay it's just a little stronger." ECF Doc. 1 at 22. She filed a Request for Administrative Remedy on June 26, 2018, asking to be assessed by medical staff (at her new facility, FCI Waseca) and for the medical staff at FCI-Tallahassee to be closely monitored. *Id.* at 20. She claimed the medication caused her to "have slurred speech, impaired specific hearing abilities as well as causing shortness of breath." *Id.*

The Warden responded to the Request for Administrative Remedy and determined that Cotten had received the appropriate assessment and treatment. *Id.* at 21. The Warden determined that Cotten was dispensed the correct medication and that Cotten had not requested a medical assessment following the incident or since she arrived at FCI Waseca, despite the fact that she had been to Health Services several times for other health concerns. *Id.* Cotten appealed her claim to the Regional Director and then to the Central Office, and her appeal was denied by the Administrator of National Inmate Appeals on December 12, 2018. *Id.* at 16.

Cotten did not add any additional facts to those appeals relevant to her claims here, other than stating at one point that "the pharmacist that administered the improper medication wasn't paying attention" and that she was given the wrong

medication "by the negligence of medical staff." ECF Doc. 1 at 15, 17. Cotten also sought monetary relief in her appeal, which was denied as being an inappropriate remedy under the Administrative Remedy Program (discussed more below).

After screening the complaint under 28 U.S.C. § 1915(e)(2), the undersigned issued an order directing Cotten to amend her complaint, if she could do so in good faith, because (1) a *Bivens* claim against federal workers in their official capacity is barred by the doctrine of sovereign immunity (*Bevan v. Steele*, 417 F. App'x 840, 841 (11th Cir. 2011)) and (2) Cotten's claims against the individual defendants in their individual capacities for violations of the Eighth Amendment do not state facts sufficient to show that Cotten suffered from a serious medical need or that the Defendants acted with deliberate indifference. ECF Doc. 9. Even in Plaintiff's own words, the action by Nurse Griffiss was simply a "mistake." *Id*.

Additionally, Cotten's allegations showed that some Defendants tried to help her, and others did not believe additional medical attention was required. Also, Cotten did not allege any facts showing that she needed further medical attention, even assuming she was given the wrong medication. Although Cotten stated she did not receive medical attention and she exhibited side-effects, there are no facts showing that any side-effect required further medical attention and did not otherwise resolve on its own. Similarly, while alleging the improper medication "had adverse long-lasting effects," she failed to identify any such effects. ECF Doc. 1 at 8.

Moreover, as stated above, the grievance and appeal records attached to the complaint contradict those allegations.  ECF Doc. 1 at 21.

## B. First Amended Complaint

On July 30, 2019, Cotten filed her first amended complaint (docketed on August 3, 2019).  ECF Doc. 12.  In her first amended complaint, Cotten sued only the BOP and "Nurse Grifiss a/k/a Nurse Griffin."  *Id.* at 2-3.  In her statement of facts, Cotten alleged, as she did in her initial complaint, that Nurse Griffiss gave her the wrong medication, this time identifying it as 1800 mg Trileptal instead of 600 mg Tegretol.[4]  *Id.* at 5.  She further alleged, as she did before, that Nurse Griffiss "admitted the mistake" but "believed that it was a problem that needed no further addressing."  *Id.*  Although Cotten continued to allege inaction by Fairchild, Turner and Sailor, she did not name them as defendants.  *Id.*  As she did in her first complaint, Cotten again referenced the side effects of "reduced mobility, attention deficit, concentration and very ill."  *Id.*  She also once again alleged that her Eighth

---

[4] Trileptal and Tegretol are both anticonvulsant medications that are used to treat epilepsy as well as bipolar disorder.  See the following:
https://www.webmd.com/drugs/2/drug-17984-5005/trileptal-oral/oxcarbazepine-oral/details;
https://www.webmd.com/drugs/2/drug-1502/tegretol-ral/detailshttps://www.psycom.net/bipolar-medications-trileptal; https://www.psycom.net/bipolar-medications-tegretol.

Based on the grievance and appeal documents attached to Cotten's initial complaint, the institution's records indicate she was given Carbamazepine 600 mg and Levetiracetam 1000 mg and not Trileptal or Tegretol.  ECF Doc. 1 at 21.  These drugs are also anticonvulsants. https://www.webmd.com/drugs/2/drug-1493-5/carbamazepine-oral/carbamazepine-oral/details; https://www.webmd.com/drugs/2/drug-17855-1750/levetiracetam-oral/levetiracetam-tablet-for-oral-suspension/details.

Amendment rights had been violated, but this time sought $75,000 in actual damages and punitive damages.

Cotten, however, continued to omit any facts from which the Court could reasonably infer that further medical attention was required or that Nurse Griffiss gave her the wrong medication intentionally or for a nonmedical reason, as opposed to negligently doing so.  Also, Cotten continued to sue Nurse Griffiss in only his official capacity, even though such a claim is barred by sovereign immunity.  ECF Doc. 12 at 2.

The first amended complaint did not correct the deficiencies identified in the Court's July 10 amend order (ECF Doc. 9).  Thus, on August 12, 2019, the undersigned issued a Report and Recommendation, recommending that Cotten's action be dismissed for failure to state a claim.  ECF Doc. 13.

While the Report and Recommendation was pending, Cotten moved for four (4) extensions of time to file an objection (or move for an opportunity to amend), all of which were granted except one, which was denied because it was moot.[5]  ECF Docs. 14, 16, 18, 21.  However, on October 18, 2019, instead of filing an objection or motion to amend, Cotten filed what she titled as a "First Amended Complaint," but what was, in essence, a second amended complaint.  ECF Doc. 23.  Cotten's

---

[5] Plaintiff's extension was denied because it was unnecessary, as Plaintiff's motion was docketed one day after the Court granted Plaintiff a two-week extension of time to file her objections.  ECF Doc. 19.

second amended complaint was not on the proper Court-approved form (it was not on any form at all). On November 5, 2019, the District Judge vacated the Report and Recommendation and entered an order granting Cotten leave to file a third amended complaint. ECF Doc. 24.

### C. Second Amended Complaint

Although the District Judge's order eliminated the need to screen the second "first amended complaint", the undersigned has now reviewed that complaint for purposes of this Report and Recommendation. In this version of her complaint, Cotten does not sue the BOP, but instead sues only Nurse Griffiss and Nurse Newell (who was mentioned in the initial complaint).

Cotten alleges, as she did in her prior complaints, that Nurse Griffiss made a "mistake" and gave her the wrong medication and admitted to giving her the wrong medication but "believed it would not create a problem nor did it need further action." ECF Doc. 23 at 2. As to Nurse Newell, Cotten alleges the nurse was aware of the wrong medication being dispensed, and, even though Cotten requested medical assistance, Nurse Newell did not provide any. *Id.*

Cotten also references side-effects, including "mobility problems, attention deficit, reduced concentration, and issues with my physical well-being." Although Cotten does not specifically state she suffered these side effects, the undersigned will read her complaint liberally and make that inference. In this version of the

complaint, Plaintiff does not seek any affirmative injunctive relief and, instead, seeks only monetary damages, this time for $800,000.00.

### D. **Third Amended Complaint**

On December 10, 2019, Cotten filed her third amended complaint, which as set forth above, contains even less facts than her prior complaints; fails to allege any constitutional violations; fails to reference any side effects or physical injuries from the medication; and adds the following two facts not alleged before: Nurse Griffiss told her the medications were in the same family and Nurse Griffiss had given her the wrong medication on multiple consecutive occasions. ECF Doc. 26 at 3.

### III.   **LEGAL STANDARD FOR SCREENING**

Under 28 U.S.C. § 1915A, because Cotten is proceeding *pro se* and is a prisoner seeking relief against a governmental entity and employee, this Court must review Cotten's complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a), (b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). In undertaking this review, the Court reads Cotten's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519 (1972). Additionally, in determining whether a complaint should be dismissed on screening, the Court

applies the same standards for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).

To survive dismissal for failure to state a claim under 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The mere possibility that the defendant acted unlawfully is insufficient to protect a complaint from dismissal.  *Id.*; *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), that is, "cross the line from conceivable to plausible."  *Id.* at 570.  As the Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.

IV.   **LEGAL ANALYSIS**

As a federal prisoner seeking relief against the BOP and a federal employee, Cotten's claims must be cognizable, if at all, under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), or the Federal Torts Claims Act ("FTCA").   Although Cotten does not reference any constitutional violations in her third amended complaint, because she references the Eighth Amendment in her prior complaints, the undersigned considered her allegations both under *Bivens* and the FTCA.

### A. Claims Under the FTCA

The FTCA is a limited waiver of sovereign immunity for actions against the United States (including its agencies) for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Tisdale v. United States,* 62 F.3d 1367, 1370-71 (11th Cir. 1995) (internal quotations omitted).   Statutory waivers of sovereign immunity must be construed strictly in favor of the sovereign. *Means v. United States,* 176 F.3d 1376, 1378 (11th Cir. 1999) (quotation and citation omitted).

Pursuant to the FTCA, 28 U.S.C. § 2675(a), "[a]n action shall not be instituted . . . against the United States for money damages for injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall been finally denied by the agency in writing." *See id.* Thus, for this Court to have jurisdiction over an FTCA action, Cotten must first show that she presented her claim for monetary damages in a sum certain to the BOP and that the BOP denied it in writing. *See Ellis v. Bureau of Prisons*, 239 F. App'x 466, 469, n. 1 (11th Cir. 2007) (holding, under the FTCA, because "plaintiff presented no evidence that he met this requirement, the district court did not have jurisdiction over any claim for monetary damages against the BOP as an agency"); *Burchfield v. United States*, 168 F.3d 1252, 1254-55 (11th Cir. 1999) (A "district court only has jurisdiction over an FTCA action if the plaintiff has met section 2675(a)'s requirements").

A review of Cotten's claim documents (attached to her initial complaint) shows that Cotten has not exhausted her administrative remedies as to her tort claim seeking money damages for a sum certain against the United States.[6] *See* Exhibits to ECF Doc. 1. Although Cotten filed a claim under the Administrative Remedy

---

[6] Because a dismissal for failure to exhaust administrative remedies is essentially a dismissal under Federal Rule of Civil Procedure 12(b)(1), even if the grievances and appeals were considered documents outside the four corners of the third amended complaint, they could be considered by the Court. *See Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 732 (11th Cir. 1982) (when the jurisdictional attack is factual, the Court may look outside the four corners of the complaint to determine if jurisdiction exists).

Program regarding Nurse Griffiss' conduct in administering the wrong medication, that claim was not the proper vehicle for seeking monetary damages under the FTCA. *See Smith v. U.S. Dep't of Justice*, No. 4:11CV564-WS/CAS, 2012 WL 5590831, at *2 (N.D. Fla. Oct. 11, 2012) (court lacked jurisdiction over the FTCA claim where prison grievances exhausted administrative remedies for *Bivens* claims, but "there are separate procedures for exhausting tort claims," which plaintiff had not undertaken), *report and recommendation adopted*, No. 4:11CV564-WS, 2012 WL 5591412 (N.D. Fla. Nov. 15, 2012); *Fischer v. Fed. Bureau of Prisons*, 2007 WL 2702341, *4 (M.D. Fla. Sept. 14, 2007) (same and also emphasizing the requirement that the claim be for a *sum certain* "facilitates administrative disposition of the claim" and "serves to discourage those with potential claims from withholding information from the agency in hopes that a subsequent lawsuit might enhance the value of the claim").

Her claim initially requested "close monitoring of the medical staff at FCI Tallahassee" and "to be assessed by the medical staff at FCI Waseca." ECF Doc. 1 at 21. Subsequently, during the appeal process she requested monetary relief. She was advised by the Regional Director on September 12, 2018, that "[m]onetary damages may not be awarded via the administrative remedy process. If you wish to seek monetary compensation based on negligence of staff, you must file your claim through the administrative procedures applicable to the basis of your claim (i.e., 31

U.S.C. § 3723 or the Federal Tort Claims Act)." ECF Doc. 1 at 19. She was advised again by the Central Office, on appeal, that the process she used does not allow for monetary compensation. *Id.* at 15. Thus, the Central Office referred her to the statutorily-mandated procedures in place for making a claim for money and there is no evidence that she undertook that process.

The statutorily mandated procedures referenced by the Central Office are found in 28 U.S.C. § 2675 and its implementing regulations, 28 C.F.R. § 543.30, *et seq.*, and 28 C.F.R. § 14.1, *et seq. See also* BOP Program Statement 1320.06 (directing inmates to 28 C.F.R. § 14.1 for claims for monetary damages). Under those procedures, Cotten must first have filed an administrative claim, including a claim for money damages in a sum certain for the alleged injury sustained, on a Standard Form 95 or otherwise in writing with the BOP by mailing or delivering her claim to the regional office in the region where FCI Tallahassee is located. BOP Program Statement 1320.06; 28 C.F.R. § 543.32; 28 C.F.R. §§ 14.2; *Bush v. United States*, 703 F.2d 491, 494 (11th Cir. 1983). Cotten has not alleged that she filed such a claim and the documents she has provided do not support such a conclusion. *See Davis v. United States*, 2015 WL 11142426, at *14 (N.D. Ga. Mar. 31, 2015) ("Because a Court cannot exercise jurisdiction over a suit brought under the FTCA unless the claimant has exhausted her administrative remedies, Plaintiff bears the

burden of establishing that her administrative claim was timely filed."), *citing Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843-44 (11th Cir. 2013).

Accordingly, because Cotten did not exhaust the BOP's administrative procedures with regard to her monetary claim, this Court does not have jurisdiction to consider her claim under the FTCA (even if she could allege facts supporting the elements of a negligence claim). *McNeil v. United States*, 508 U.S. 106, 113 (1993) (affirming dismissal of plaintiff's FTCA claim for lack of subject matter jurisdiction because "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies").

## B. Claims Under *Bivens*

In *Bivens*, the Supreme Court established the availability of a cause of action for monetary damages against federal officials in their individual capacities based on a violation of a federal constitutional right. *Bivens*, 403 U.S. at 395-97. As set forth above, the undersigned will liberally construe Cotten's claims as seeking relief for violation of the Eighth Amendment for deliberate indifference to a medical need, which is cognizable under *Bivens*. *See Carlson v. Green*, 446 U.S. 14 (1980) (extending *Bivens* to violations of the Eighth Amendment). Despite the availability of an Eighth Amendment claim under *Bivens*, for the reasons set forth below, Cotten has failed to state such a claim against the BOP or Nurse Griffiss.

### 1.  Cotten's *Bivens* Claims Against The BOP

A *Bivens* action **may not** be asserted against federal agencies, such as the BOP.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."); *Ellis*, 239 F. App'x at 469 ("To the extent that [Plaintiff] argues he sought monetary damages against the BOP itself, a federal agency, such a claim is not cognizable under *Bivens* . . . ."); *Bosfield v. Ard*, No. CV513-058, 2013 WL 5574458, at *2 (S.D. Ga. Oct. 8, 2013) (citing *FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994)).  The proper defendants in a *Bivens* claim are the federal officers who allegedly violated Cotten's constitutional rights, not the federal agency which employs the officers.  *Id.*  Accordingly, the undersigned finds that Cotten's monetary claims against the BOP should be dismissed.

### 2.  Cotten's Claims for Injunctive Relief

Cotten has also included what appears to be a claim for affirmative injunctive relief.  Namely, Cotten seeks "adequate medical and psychological care and necessary and timely follow-up as well."  ECF Doc. 26 at 4.  As an initial matter, although *Bivens* does not necessarily preclude a claim for injunctive relief against the BOP, no such relief is available to Cotten.  *See Pinkney v. Lockett*, Case No.

5:16-cv-00103-Oc-02PRL, 2019 WL 1254851, at *5-7 (M.D. Fla. Mar. 19, 2019) (holding *Bivens* did not extend to federal inmate's First Amendment retaliation claim and noting "Plaintiff arguably had alternative remedies available to him in the form of a suit for injunctive relief and the BOP grievance process").

Also, Cotten does not meet the requirements for injunctive relief. First, Cotten is no longer at FCI Tallahassee where the events complained of occurred, and thus her claim for injunctive relief is moot. *See Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) ("The general rule in our circuit is that a transfer or release of a prisoner from prison will moot the prisoner's claim for injunctive relief"), *abrogated on other grounds by Sossamon v. Texas,* 563 U.S. 277 (2011). Second, there are no allegations that Cotten continues to receive the wrong medication or needs any additional medical treatment. *See Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects.") (citation omitted);

Third, a district court is hesitant to interfere with the management of prison affairs by the BOP. *See Reid v.* Lockett, 2017 WL 11471687 *2 (M.D. Fla. August 8, 2017) ("it would be a disservice to the public interest for this Court to insert itself into the day to day management of a prison"); *Perez v. Vazquez*, 2006 WL 2535044 *3 (S.D. Ga. August 30, 2006) ("[t]he Court will not substitute its judgment for that

of the BOP with regard to the internal management and day-to-day operations of its prisons"). Fourth, as shown below, the undersigned finds that Cotten has failed to present facts sufficient to infer a constitutional violation has occurred.

### 3. Cotten's Eighth Amendment *Bivens* Claim Against Griffiss

A prisoner claiming that she was deprived of medical care in violation of the Eighth Amendment must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008). Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted). The Supreme Court has emphasized that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Moreover, "[m]ere incidents of negligence or malpractice" in diagnosing or treating a medical condition "do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 105, 104-06 (1976)); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Nor does a medical judgment call, or an accidental or inadvertent failure to

provide adequate medical care, support a claim of cruel and unusual punishment. *Estelle*, 429 U.S. at 105-106.

      a. <u>Serious Medical Need</u>

      To establish the first element of her claim, Cotten must present evidence sufficient to demonstrate that she suffered a serious medical need. "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal marks omitted). "[A]n objectively serious medical need" is one so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor*, 221 F.3d at 1258 (11th Cir. 2000) (internal quotation marks, alterations, and citations omitted). A plaintiff may also show a serious medical need by proving that "a delay in treating the need worsen[ed] the condition." *See Mann v. Taser Intern., Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009).

      Here, Cotten alleges she was given the wrong medication, that Nurse Griffiss acknowledged he had given Cotten the wrong medication and that the "mistake could be deadly." ECF Doc. 26 at 3. These factual allegations are insufficient to show that Cotten suffered a serious medical need, even assuming that she was exhibiting side effects from the medication. Specifically, there are no facts showing that Cotten needed further medical treatment or that lack of treatment posed a

substantial risk of harm to Cotten.  Indeed, as stated above, there are no allegations in any version of Cotten's complaints that she suffered any additional or other harm because she did not get additional treatment.  As the Warden noted in his reply to her claim under the Administrative Remedies Program, there is no evidence that Cotten sought further treatment after the incident while at FCI Tallahassee or after she was transferred to FCI Waseca.  *See, e.g., Werch v. City of Berlin*, 673 F.2d 192, 196 (7th Cir. 1982) (where the exhibits plaintiff attached to his complaint "belied these allegations," court did not err in deeming the claims meritless).

Moreover, there is no allegation that the side effects she initially experienced were more than temporary or that they did not subside or resolve on their own without medical intervention.  Cotten, does not allege, in any of her complaints, for example, that she has suffered any symptoms that were made worse without treatment or that required later treatment.  At most, she alleges, in conclusory fashion, that the side effects were long-lasting and "could" have been deadly. Conclusory allegations, however, are insufficient.  The allegations in Cotten's complaints simply would not cause a lay person to recognize that Cotten needed a doctor's attention.  To the contrary, Cotten alleges in her initial complaint that when the officers requested medical attention, the medical staff indicated that further medical attention was not necessary and Cotten has failed to allege any facts

sufficient to dispute that determination. Thus, Cotten has failed to show she suffered a serious need.

      b. Deliberate Indifference

To establish the second element of her claim, Cotten must show Nurse Griffiss knew of, and disregarded, an excessive risk to her health or safety. "[T]he official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer*, 511 U.S. at 837. Cotten must prove (1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence. *See Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017).

An official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." *Nam Dang,* 871 F.3d at 1280, *citing Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997), *overruled on other grounds by LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009). Additionally, a delay of treatment for obviously serious conditions can result in a constitutional violation where "it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical

problem, and the delay is medically unjustified." *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1187-89 (11th Cir.1994).

The second element of a deliberate indifference claim requires a plaintiff to show "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle*, 429 U.S. at 105).

Even assuming Cotten had a serious medical need, Cotten failed to show that Nurse Griffiss was deliberately indifferent to that need. Specifically, Cotten does not allege any facts showing that Nurse Griffiss's error, if there was one, was anything more than a mistake. Cotten uses the term "mistake" and "negligence" in her complaints and her request for administrative remedy. A defendant's response to plaintiff's serious medical need, however, must be "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice." *Taylor* 221 F.3d at 1258, citing *Estelle,* 429 U.S. at 105–06 (internal quotation marks omitted).

Cotten also does not allege any facts showing that Nurse Griffiss gave Cotten the wrong medication with the knowledge that doing so posed a risk of serious harm

to her.  *See Mahan v. Plymouth County House of Corrections*, 64 F.3d 14, 18 (1st Cir.1995) (finding that failure to administer prescription medication did not constitute deliberate indifference absent evidence that prison officials knew the plaintiff would suffer serious medical consequences without medication).  Instead, Cotten alleges that Nurse Griffiss explained the medications were in the same family and that she would be okay.

Simply giving Cotten the wrong medication is not sufficient to constitute an Eighth Amendment claim.  *See Herndon v. Whitworth*, 924 F. Supp. 1171, 1173-74 (N.D. Ga. 1995) (finding no deliberate indifference, even assuming the defendants provided the plaintiff with the wrong medication, the plaintiff told the staff nurse he was receiving the wrong medication and the plaintiff suffered "several epileptic episodes", because the plaintiff failed to show the defendants' conduct was "so grossly incompetent, inadequate, or intolerable so as to shock the conscience or to be intolerable to fundamental fairness."  (internal quotations omitted)); *Chatham v. Adcock*, 334 F. App'x 281, 287 (11th Cir. 2009) (holding, in a case where the plaintiff allegedly received improper medication, "[n]egligence . . . even rising to the level of medical malpractice, does not constitute deliberate indifference").

Similarly, Nurse Griffiss acknowledging he had given her the wrong medication but determining that nothing further was needed does not support a claim for deliberate indifference.  As stated herein, Cotten has not set forth any facts that

further medical treatment was needed and such that Nurse Griffiss was wrong in his diagnoses. *See Salahuddin v. Goord*, 467 F.3d 263, 281-82 (2d Cir. 2006) (holding, no deliberate indifference where the defendant cancelled a liver biopsy because he believed that it was not medically necessary at that time).

Additionally, even if Nurse Griffiss's assessment was wrong, Cotten has not shown that Nurse Griffiss intentionally withheld medical treatment for a nonmedical reason. *Hill.*, 40 F.3d at 1191 ("Implicit in the *Estelle* deliberate indifference standard is *knowledge* of the [plaintiff's] *particular medical condition* in order to establish intent or a sufficiently culpable state of mind *to deny or to delay purposely* access to medical care or intentionally to interfere with the treatment once prescribed. . . ." (emphasis in original, citations omitted, internal quotation marks omitted)), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *Campbell v. Davis*, No. 516CV01275LSCJEO, 2017 WL 4052826, at *7, 11 (N.D. Ala. July 31, 2017) (holding that, even assuming the plaintiff received the wrong medication, deliberate indifference was not established because there was no "showing that prison doctors or guards intentionally and deliberately denied or delayed access to medical care for a serious medical condition"), *report and recommendation adopted*, No. 516CV01275LSCJEO, 2017 WL 4030589 (N.D. Ala. Sept. 13, 2017). Nurse Griffiss's conduct, based on the allegations contained in the complaints, did not rise to the level of "so grossly incompetent, inadequate, or

excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (citation omitted, internal quotation marks omitted).

Thus, Cotten's disagreement with Nurse Griffiss's diagnoses that Cotten did not need further medical attention is not sufficient to state a deliberate indifference claim. *See, e.g.*, *Clas v. Torres*, 549 F. App'x 922, 924 (11th Cir. 2013) ("Although [the prisoner-plaintiff] felt [the defendants'] responses were inappropriate or inadequate, a doctor's choice of treatment and testing is a matter of medical judgment and does not state an Eighth Amendment deliberate indifference claim."); *Criner v. Hernandez*, 562 F. App'x 930, 932 (11th Cir. 2014) ("[E]vidence of potential error in the medical judgment of [the medical defendants] does not create a genuine issue of material fact because it does not demonstrate action or inaction beyond gross negligence.").

Accordingly, the undersigned finds that Cotten has failed to state a claim against Nurse Griffiss for deliberate indifference.

## V.   <u>CONCLUSION</u>

Cotten initiated this case more than a year ago and she has amended her complaint three (3) times. Cotten's current complaint is more deficient and less substantive than her prior complaints. Moreover, even when reading all the allegations in all of Cotten's complaints together, and liberally, Cotten's allegation that she was given the wrong medication and suffered some initial side effects,

simply does not support a claim for deliberate indifference. While a plaintiff, particularly a *pro se* plaintiff, should be given an opportunity to amend prior to dismissal, the undersigned simply does not believe that, even with a more carefully drafted complaint, Cotten could state a claim. Thus, the undersigned finds that an additional opportunity to amend would be futile. *Johnson v. Boyd*, 568 F. App'x 719, 723 (11th Cir. 2014) (citing *Bank*, 928 F.2d 1108, 1112 (11th Cir. 1991)). .

Accordingly, it is respectfully RECOMMENDED, that:

1.    The third amended complaint, ECF Doc. 23, be dismissed under 28 U.S.C. §§ 1915A and 1915(e)(2) for failure to state a claim.

2.    The clerk be directed to terminate Defendants Newell, Turner, Sailor, Langford and Fairchild as they were omitted by Cotten in her third amended complaint, which is the operative pleading.

3.    The clerk be directed to close the file.

At Pensacola, Florida, this 22nd day of January, 2020.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a

report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.